Tracy Tribbett (WSBA #35922)
PACIFIC JUSTICE INSTITUTE
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868
ttribbett@pji.org

Katherine Hartley* (Idaho State Bar #11837)
PACIFIC JUSTICE INSTITUTE
P.O. Box 2131
Coeur d'Alene, ID 83815
(858) 945-6924
khartley@pji.org
*pro hac vice admission pending

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**TACOMA DIVISION**

| | |
|---|---|
| MATTHEW BROCK, MD; and SERVING HANDS MEDICAL CLINIC, a non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NICK BROWN, in his official capacity as the Attorney General of Washington; HAN TRAN, CHELSEA DIMAS, KYLE WOOD, and ISATOU JALLOW, as Commissioners of the Washington State Human Rights Commission in their official capacities; and TERRY MURPHY, in his official capacity as chair of the Washington Medical Commission,<br><br>Defendants. | Case No.:<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF [42 U.S.C. § 1983]**<br><br>[Demand for Jury Trial] |

Plaintiffs Matthew Brock, MD, and Serving Hands Medical Clinic, by and through their undersigned counsel, allege as follows:

## OVERVIEW

1. Dr. Matthew Brock is the medical director of Serving Hands Medical Clinic ("Serving Hands"), a non-profit, Christian faith-based medical clinic located in Vancouver, Washington.

2. Dr. Brock is a Christian who believes that his professional talents and his faith are inseparable.

3. Dr. Brock believes in the Bible and desires to share the gospel message with everyone.

4. The gospel message is offensive to some, but Dr. Brock's faith requires him to speak the truth according to the Bible.

5. Dr. Brock wishes to express his religious beliefs in the workplace, including his beliefs about marriage, sexuality, and gender identity.

6. But Washington strips Dr. Brock and Serving Hands of the freedom to choose what messages to convey.

7. Specifically, messages Dr. Brock speaks related to human sexuality are subject to disciplinary action by the state.

8. The Washington Medical Commission (WMC) makes physicians like Dr. Brock subject to discipline under Policy 2022-01 if he speaks in a manner considered offensive to others based on sexual orientation or gender identity. Specifically, WMC can find Dr. Brock to have conducted discriminatory behavior if he engages in speech deemed to be negative regarding sexual orientation or gender identity.

9. Therefore, Dr. Brock cannot express his sincerely held religious belief about same-sex relations or that God creates only male and female.

10. Washington law also provides that Dr. Brock and Serving Hands

cannot engage in "offensive and unwelcome behavior" as to an "individual's sexual orientation or gender identity." *See*, Washington Administrative Code (WAC) § 162-32-040(3).

11. This term is undefined such that the governing agency and agents are able to individually assess what constitutes "offensive and unwelcome behavior" on an individualized basis.

12. Therefore, if Dr. Brock and Serving Hands speak their desired message about sexual orientation or gender identity, they would face costly and time-consuming investigations, fines, and state licensure discipline.

13. Dr. Brock and Serving Hands wish to express their religious beliefs in their medical clinic, but cannot due to Defendants' policies.

14. To repair their First Amendment freedoms to speak their beliefs, and to ensure that other medical professionals have the same freedoms, Dr. Brock and Serving Hands ask that this Court enjoin Policy 2022-01 and WAC § 162-32-040(3) and declare that it violates their rights.

## **PARTIES**

15. Plaintiff Matthew Brock, MD, is an individual who resides in Vancouver, Washington.

16. Plaintiff Serving Hands Medical Clinic is a non-profit medical clinic in Vancouver, Washington.

17. Defendant Brown is the Washington Attorney General and has authority to enforce the Washington Law Against Discrimination (WLAD), RCW § 49.60.

18. Defendant Commissioners Tran, Dimas, Wood, and Jallow have authority to enforce the WLAD.

19. Defendant Murphy is the chair of the WMC and has the authority to enforce Policy 2022-01 and RCW § 18.130.180(4).

20. All Defendants are sued in their official capacities.

## JURISDICTION AND VENUE

21. The Defendants are located within this judicial district and division. All of the events and omissions giving rise to the claims alleged herein occurred in this judicial district and division. Therefore, this Court has personal jurisdiction over the Defendants.

22. Furthermore, venue is proper in this Court and in this division under 28 U.S.C. § 1391(b).

23. This Court has federal question jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 and 1343(a)(3).

24. This Court has the authority to grant the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202.

25. This Court has the authority to award attorneys' fees and costs under 42 U.S.C. § 1988.

## STATEMENT OF FACTS

26. The WLAD bans discrimination in places of public accommodation that occurs because of disability, race, creed, color, sex, sexual orientation, gender identity, marital status, national origin, or ancestry.

27. A place of public accommodation includes, but is not limited to, any place, licensed or unlicensed, kept for gain, hire, or reward, or where charges are made for admission, service, occupancy, or use of any property or facilities. RCW § 49.60.040(2).

28. Serving Hands is considered a place of public accommodation under Washington law.

29. Serving Hands treats all people regardless of their age, race, religion, sexual orientation, identity, gender, or other protected characteristic.

30. Dr. Brock views each person as a priceless and valuable soul

whom God desires to have an active relationship with.

31. Dr. Brock speaks about the Bible, which some may find offensive.

32. Dr. Brock believes that sharing the gospel message and the whole counsel of God is the most important work he does.

33. This lawsuit challenges the provision of WLAD which states it is unlawful to engage in "offensive or unwelcome behavior" related to an individual's sexual orientation or gender identity in a place of public accommodation. *See*, WAC § 162-32-040(3). The terms "offensive or unwelcome behavior" are not defined.

34. The Washington State Human Rights Commission (WSHRC) is charged with enforcing the WLAD and can investigate, hold hearings, subpoena witnesses, and otherwise evaluate charges of discrimination.

35. The Washington Attorney General can also enforce the WLAD.

36. These Defendants have the power to prosecute, fine, and order re-education in businesses charged with discrimination.

37. Dr. Brock and Serving Hands are under active investigation by the WSHRC for expressing their sincerely held religious beliefs about sexual orientation to a patient, despite the patient sharing her Christian faith with Dr. Brock and despite Dr. Brock treating that patient the same as any other patient. *See*, **Exhibit A**.

38. The WMC bans discrimination in health care, including discrimination based on sexual orientation and gender identity/expression.

39. WMC's Policy 2022-01 states that discrimination can be determined based on "hate speech," "other overt expressions," or "verbal/nonverbal behavior" that communicates negativity about sexual orientation. These terms are also not defined. *See*, **Exhibit B**.

40. Under WMC's framework, licensees can be disciplined by Defendant Murphy for unprofessional conduct under RCW § 18.130.180(4) if WMC commissioners determine that a licensee has engaged in discrimination.

41. Under WAC § 246-16-890, the WMC's authority to discipline a physician for unprofessional conduct is discretionary depending on aggravating and mitigating factors. Physicians can present mitigating factors to WMC.

42. One such mitigating factor is a physician's "remorse or awareness that the conduct was wrong."

43. Defendant Murphy has the power to compel speech including: remedial measures, re-education, restricting practice, ordering a mental or physical examination, ordering a letter of apology to be written, or revoking the license of a physician if, in the WMC's discretion, he violates Policy 2022-01.

44. Dr. Brock is under investigation by the WMC for expressing his sincerely held religious beliefs about sexual orientation to a patient, despite treating that patient the same as any other patient. *See*, **Exhibit C**.

45. Dr. Brock's exercise of his faith, as a dedicated Christian who operates Serving Hands, integrates his faith with his professional talents as a physician.

46. As required by his sincerely held religious beliefs, Dr. Brock seeks to live his life and operate Serving Hands in accordance with his Christian faith.

47. To this end, Dr. Brock seeks to communicate the tenets of his faith found in the Bible to the patients he serves at Serving Hands.

48. Dr. Brock will share the whole of the Bible with a patient if that patient consents to such a conversation.

49. One of these beliefs is that God created only male and female and that marriage is designed to be only between one man and one woman.

50. Dr. Brock and Serving Hands serve all types of patients including

LGBTQ clients and do not discriminate based on any characteristic. Serving Hands provides the same quality and type of medical care regardless of anyone's protected characteristics.

51. Dr. Brock treats all of his clients with dignity and respect, and views each person as created in the image of God with an eternal soul.

52. Toward this end, Dr. Brock shares his faith with patients of all backgrounds, faiths, lifestyles, health, and walks of life.

53. Faith-based conversations with clients are entirely voluntary, and any patient may decline to have a spiritual conversation at Serving Hands.

54. A patient's choice to engage or not engage in a faith-based conversation has no bearing on the level or quality of treatment received at Serving Hands.

55. At times, Plaintiffs wish to communicate their religious beliefs about sexual orientation and gender identity.

56. If a patient is willing to engage in such conversation of faith, as a natural progression in sharing his faith in Jesus, Dr. Brock wishes to provide the full counsel of God including God's views on human sexuality, gender, and marriage.

57. But Washington law makes it illegal for Plaintiffs to do so because it may be considered "offensive," "unwelcome," or "hate speech" because their Christian beliefs do not agree with the concepts of same-sex relationships or gender identity.

58. Plaintiffs seek relief from this Court to restore their ability to express their religious beliefs.

**FIRST CLAIM FOR RELIEF**

**(Violation of Plaintiffs' Free Speech Rights**
**in Violation of 42 U.S.C. § 1983, Against All Defendants)**

59. Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

60. The Free Speech Clause in the First Amendment to the U.S. Constitution provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech."

61. The Free Speech Clause applies to the states and their subdivisions and municipalities through the Fourteenth Amendment to the U.S. Constitution.

62. The Free Speech Clause prohibits restrictions of speech that are based on content or viewpoint.

63. The Free Speech Clause also prohibits restrictions of speech that are overbroad.

64. On its face and as applied to Plaintiffs, WMC Policy 2022-01 and WAC § 162-32-040(3) violate the First Amendment's Free Speech Clause because they restrict expression and speech based on content and viewpoint.

65. Policy 2022-01 facially targets speech through the terms "hate speech," "verbal behavior," and "overt expressions."

66. Policy 2022-01 therefore regulates speech about certain topics, including sexual orientation and gender identity, while leaving as unrestricted speech on other topics not listed within the policy.

67. Likewise, WAC § 162-32-040(3) targets speech through the term "offensive or unwelcome behavior."

68. Speech is a form of behavior.

69. WAC § 162-32-040(3) regulates speech about certain topics, including sexual orientation and gender identity, while leaving as unrestricted

speech on other topics not listed in the code.

70. These policies prevent Plaintiffs from speaking their desired message, which reflects their Christian beliefs.

71. Because of these policies, Plaintiffs are chilled and deterred from engaging in respectful conversations that reflect their own beliefs on sexual orientation and gender identity.

72. The policies are also unconstitutionally overbroad.

73. Because these policies infringe on free speech rights, they must further a compelling state interest and be narrowly tailored.

74. The policies do not serve any compelling interest and are not narrowly tailored.

75. Accordingly, facially and as applied to Plaintiffs, the policies violate the Free Speech Clause.

## SECOND CLAIM FOR RELIEF

**(Violation of Free Exercise Rights in Violation of 42 U.S.C. § 1983, Against Defendants)**

76. Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

77. The Free Exercise Clause in the First Amendment to the U.S. Constitution provides, in relevant part, that "Congress shall make no law . . . prohibiting the free exercise" of religion.

78. The Free Exercise Clause protects against governmental hostility toward religion.

79. The Free Exercise Clause also requires that the state be neutral on matters of religion.

80. Plaintiffs' compliance with their religious beliefs constitutes a religious exercise under the First Amendment.

81. Plaintiffs sincerely believe that marriage is between one man and one woman only. Plaintiffs also believe that God designs men and women distinctly, and gender cannot change.

82. Plaintiffs also hold sincere religious beliefs that require them to tell others the truth about what the Bible says and about Christian doctrine on matters of sexuality when taking part in a voluntary, calm, mutual conversation and exchange of ideas.

83. As applied to Plaintiffs, WMC Policy 2022-01 violates the First Amendment's Free Exercise Clause because it equates expression of religious truth to discriminatory behavior that can be punished.

84. Under WAC § 246-16-890, the WMC's authority to discipline a physician for unprofessional conduct is discretionary depending on aggravating and mitigating factors. Physicians have the opportunity to present mitigating factors to WMC.

85. One such mitigating factor is a physician's "remorse or awareness that the conduct was wrong."

86. These policies force Dr. Brock to choose between two impossible options: (1) adhere to his religious beliefs, continue to speak consistently about his beliefs to his patients and say his conduct was consistent with his religious beliefs and suffer investigation and penalties; or (2) violate his religious beliefs and refrain from having religiously motivated discussions with his patients and make a confession to WMC that his conduct was wrong.

87. WMC's case-by-case discretion to consider aggravating and mitigating factors is a system of individualized exemptions, and therefore not a generally applicable regulation.

88. Because application of WMC Policy 2022-01 is not operationally neutral or generally applicable, it must further a compelling interest in a

narrowly tailored way, using the least restrictive means.

89. Likewise, WAC § 162-32-040(3) is enforced through a system of individualized exemptions, where government officials have discretion.

90. Defendants cannot show any legitimate, substantial, narrowly tailored, or compelling state interest in censoring Dr. Brock from expressing his religious beliefs through a voluntary conversation with a patient in his Christian-based medical clinic.

91. To achieve any legitimate interests that Defendants might assert, Defendants must demonstrate alternative, less restrictive means of achieving the government's interest.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court enter judgment against Defendants and provide the following relief:

A. A declaratory judgment that Policy 2022-01, on its face and as applied to Dr. Brock, violates the Free Speech Clause and the Free Exercise Clause of the First Amendment to the U.S. Constitution;

B. A declaratory judgment that on its face and as applied to Plaintiffs, WAC § 162-32-040(3) violates the Free Speech Clause of the First Amendment to the U.S. Constitution;

C. An award of attorneys' fees, costs, and expenses against all Defendants pursuant to 42 U.S.C. § 1988;

D. A preliminary and permanent injunction from investigating or punishing Plaintiffs for their constitutionally protected religious expression; and

E. Such other and further relief as the Court may deem proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury with respect to all claims so triable.

Respectfully submitted this 23rd day of October 2026,

/s/ Tracy Tribbett
Tracy Tribbett (WSBA #35922)
PACIFIC JUSTICE INSTITUTE
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868
ttribbett@pji.org

*Attorney for Plaintiffs*

# VERIFICATION

I, Matthew Brock, am the Plaintiff in the above-captioned matter. I have read the Verified Complaint and am familiar with same. The contents are true and accurate and known to me by personal knowledge except for those matters asserted on information and belief. As to those matters, I believe them to be true. I declare under penalty of perjury, under the laws of the United States and the State of Washington, that the foregoing is true and correct. Executed this 21 day of October 2026 in the County of CLARK, Washington.

[signature]

Matthew Brock, Plaintiff

# EXHIBIT A

STATE OF WASHINGTON
HUMAN RIGHTS COMMISSION

08/06/2026

Serving Hands Medical Center NPC
PO BOX 87044
Vancouver, WA 98687-7044

RE: Case Name: Bailey, Kasey v. Serving Hands Medical Center
WSHRC No: HRC-153899
EEOC File No.:

Dear Serving Hands Medical Center NPC:

The above referenced complaint of discrimination has been filed with this agency. If any employment allegations are subject to federal law, this complaint will be dual filed with the Equal Employment Opportunity Commission. Pursuant to the work sharing agreement, the Human Rights Commission will investigate the complaint.

**A copy of the complaint is enclosed. When contacting the Commission, please refer to the WSHRC case number cited above.**

**The following information must be submitted by 08/27/2026:**

1. A formal response to the complaint.
2. Any and all relevant evidence to support your position.
3. Name and last known address and telephone number of witnesses who will support your position, and an explanation of the relevant information they possess.

**The Commission requests that you immediately take steps to preserve all evidence that may be relevant to this complaint.** If the evidence or information requested during the investigation of this complaint is not submitted to the Commission upon request, the refusing party will be subject to a subpoena and order compelling production of the information (WAC 162-08-09501, WAC 162-08-097).

Be advised that any information and documentation that is submitted to the Commission are subject to public records laws and will be available to anyone who requests them.

What you need to know:

- The Commission is an agency of the State of Washington which is charged with conducting a fair and impartial investigation.
- The Respondent(s) are not assumed to have practiced discrimination. We do not determine the validity of complaints until all sides are heard and all evidence is gathered.

Docusign Envelope ID: 03E3199A-B0A6-8843-82B3-3DDED369B6D9

# WASHINGTON STATE HUMAN RIGHTS COMMISSION COMPLAINT

**Complainant**: Kasey Bailey

**Respondent**: Serving Hands Medical Center NPC
PO Box 87044
Vancouver, WA 98687-7044

I charge the above-named Respondent with an unfair practice and/or aiding and abetting in the commission of an unfair practice as defined by the Washington State Law Against Discrimination, Chapter 49.60. This complaint arises from discrimination in public accommodation on the basis of sexual orientation and religion.

**The following is a summary of my complaint**:

1. I am bisexual and the Respondent is a place of public accommodation.

2. On March 17, 2026, I went to an appointment at Respondent's location with Dr. Mattew Brock, MD. During the appointment, after I informed Dr. Brock of my sexual orientation, he told me that my religious views were wrong and that I did not know Jesus because I am bisexual. He compared being gay to murder and adultery. I asked him to stop speaking to me this way multiple times, and he said he was just telling me what the Bible said, despite my views. Dr. Brock created an environment of such hostility that I felt forced to leave and unable to obtain equal services at this medical facility.

3. Therefore, I believe the Respondent discriminated against me based on sexual orientation and religion when it created an environment of such hostility that I felt harassed, was denied equal services, and believe I was treated differently than individuals who are heterosexual.

**I declare under penalty of perjury under the laws of the State of Washington that I have read the foregoing and that it is true and correct.**

DocuSigned by:
[signature]
13935836CD5244E...

8/1/2026

**Complainant's Signature** **Date**

**I allege violation of RCW 49.60, the Washington Law Against Discrimination.**

**This Box is for Commission Use Only**

| | |
|---|---|
| **HRC Case #:** HRC-153899 | |
| **EEOC Case #:** HRC ONLY | |
| **Date Filed:** 3/17/2026 | **Received by:** JM |

# EXHIBIT B

# Policy Statement

WASHINGTON Medical Commission
Licensing. Accountability. Leadership.

| | | |
|---|---|---|
| Title: | Discrimination in Health Care | POL2022-01 |
| References: | None | |
| Contact: | Washington Medical Commission | |
| Phone: | (360) 236-2750 | E-mail: medical.commission@wmc.wa.gov |
| Effective Date: | March 4, 2022 | |
| Reaffirmed: | March 13, 2026 | |
| Approved By: | Terry Murphy, MD, Chair | |

## Policy

The Washington Medical Commission (WMC) is committed to establish and maintain an environment for patients and practitioners free of discrimination. The WMC sets the expectation for all licensees that everyone shall be treated with dignity, respect and provided with equal opportunities in the healthcare delivery system. For further discussion, see the WMC Position Statement "Racism in all its forms is a public health issue".[1] To mitigate the impacts of discrimination and promote a culture of inclusion, the WMC adopts this policy to consistently apply the included framework to reports of discrimination.

### Key Terms

The following definitions are intended to provide a common understanding within this Policy and provide a context for discrimination in healthcare.

**Bias**: Tendency to favor one group over another; biases can be favorable or unfavorable and implicit or explicit.

**Discrimination**: Unfair treatment characterized by implicit and explicit bias, including microaggressions, or indirect or subtle behaviors that reflect negative attitudes or beliefs about a non-majority group. Discrimination in healthcare are differences in the quality of healthcare delivered that are not due to access-related factors or clinical needs, preferences, and appropriateness of intervention.

**Explicit Bias**: The attitudes and beliefs we have about a person or group on a conscious level, that is we are aware and accepting of these beliefs, and they are usually expressed in the form of discrimination, hate speech or other overt expressions.

---

[1] https://wmc.wa.gov/sites/default/files/public/Newsletter/RacisminAllItsForms.pdf

**Health disparities**: A health difference that is closely linked with social, economic, and environmental disadvantage. Health disparities adversely affect groups of people who have systematically experienced greater obstacles to health based on their racial or ethnic group or other characteristics historically linked to discrimination or exclusion.

**Health inequities**: Systematic differences in the health status of different population groups. Health differences that are avoidable, unnecessary, and unjust.

**Implicit Bias**: subconscious feelings, perceptions, attitudes, and stereotypes that have developed as a result of prior influences and imprints. It is an automatic positive or negative preference for a group, based on one's subconscious thoughts. However, implicit bias does not require animus; it only requires knowledge of a stereotype to produce discriminatory actions.

**Microaggression**: Brief and commonplace daily verbal/nonverbal behavioral, and environmental indignities whether intentional or unintentional that communicate hostile, derogatory or negative racial/ethnic, gender, sexual orientation, and religious slights and insults.

**Prejudice**: An unfavorable opinion or feeling formed beforehand or without knowledge, thought, or reason; a primary determinant of discriminatory behavior.

**Social determinants of health**: The conditions in the environment where people are born, live, learn, work, play, worship, and age that affect a wide range of health, functioning, and quality-of-life outcomes and risks.

## Background

Discrimination is a social determinant of health that violates fundamental human rights and impedes access to quality and equitable healthcare. It is present across medical specialties and takes many forms. Discrimination in health care disparately impacts different population groups, including people of color, ethnic origin, religious beliefs, sexual and gender preferences, and other minorities.

The impacts of discrimination have been studied and documented-in the healthcare system. Discrimination is associated with both- increased incidences and adverse outcomes for a number of disease processes: such as the development of mental health issues , hypertension, cardiovascular disease, obesity, breast cancer, substance abuse, worse perinatal outcomes and pre-mature mortality.[2] It may trigger negative emotional reactions, leading to changes in health behaviors, such as avoiding medical care, decreased adherence to medical regimens, and engagement in high-risk behaviors.[3] There is an association between reports of discrimination

[2] Williams, D.R., Mohammed, S.A. Discrimination and racial disparities in health: evidence and needed research. J Behav Med 32, 20–47 (2009). https://doi.org/10.1007/s10865-008-9185-0

[3] Aronson, J., Burgess, D., Phelan, S.M. and Juarez, L 2013: Unhealthy Interactions: The Role of Stereotype Treat in Health Disparities American Journal of Public Health 103, 50_56, https://doi.org/10.2105/AJPH.2012.300828

and adverse cardiovascular outcomes, body mass index (BMI) and incidence of obesity, hypertension and nighttime ambulatory blood pressure, insomnia, engagement in high-risk behaviors and alcohol misuse.[4] Discrimination may lead to the development of inappropriate alterations of treatment regimens as has been seen with pain management, admission algorithms, and care management programs.[5]

## Framework

Discrimination violates the standard of care and is unprofessional conduct. If discriminatory behavior is identified in a report or investigation, the WMC will take appropriate action based on the severity of the conduct. Discrimination types include but are not limited to the following:

- Age
- Race
- Ethnic origin/ Place of origin
- Citizenship/ Immigration status
- Religion/ Ideology
- Sex
- Sexual orientation
- Gender identity/ Expression
- Language/ Accent
- Weight
- Socio-economic / Housing Status
- Relationship/ Marital arrangement
- Disability (including mental, physical, developmental or learning disabilities)
- Criminal Record
- Close relationship with a person identified by one of the above types

[4] Lewis, T. T., Cogburn, C. D., & Williams, D. R. (2015). Self-reported experiences of discrimination and health: scientific advances, ongoing controversies, and emerging issues. Annual review of clinical psychology, 11, 407–440. https://doi.org/10.1146/annurev-clinpsy-032814-112728

[5] Hall, W. J., Chapman, M. V., Lee, K. M., Merino, Y. M., Thomas, T. W., Payne, B. K., Eng, E., Day, S. H., & Coyne-Beasley, T. (2015). Implicit Racial/Ethnic Bias Among Health Care Professionals and Its Influence on Health Care Outcomes: A Systematic Review. American journal of public health, 105(12), e60–e76. https://doi.org/10.2105/AJPH.2015.302903

## WMC Action

Discrimination in health care violates the standard of care and presents a risk of harm to patients and is unprofessional conduct under RCW 18.130.180(4).

All WMC commissioners, attorneys and investigators are required to receive training to identify discriminatory behavior by health care practitioners and the understanding of its impact on the delivery of care.

Discriminatory behavior can encompass a broad continuum of behavior, ranging from unintentional behavior, to conduct taken with reckless disregard for the dignity of the patient, to deliberate discriminatory behavior. At one end of the continuum, the behavior may be remediated with education and guidance. At the other end of the continuum, when the behavior is deemed reckless or intentional, the WMC may consider stronger measures, such as a restriction of practice, a mental or physical examination, and letters of apology to the patient and others impacted. In serious cases, if the practitioner cannot be rehabilitated, the WMC may choose to revoke the practitioner's license to practice medicine in accordance with the Uniform Disciplinary Act 18.130 RCW to protect the public from harm.

Practitioners should be aware that discriminatory behavior may also violate both state and federal law, including the Washington Law Against Discrimination (Chapter 49.60 RCW), the Civil Rights Act of 1964, and the Americans With Disabilities Act.

# EXHIBIT C

WASHINGTON
Medical
Commission
Licensing. Accountability. Leadership.

April 28, 2026

Matthew D. Brock, MD
1400 NE 136th Ave., Ste. 201
Vancouver, WA 98684-0993

Case number: 2026-5115MD

Dear Dr. Brock:

The Washington Medical Commission has received a complaint regarding your patient care of Ms. Kasey Dawn Bailey with DOB 04/18/1996.

According to the complaint, you allegedly argued with Ms. Bailey regarding her religious beliefs and sexuality.

The Washington Medical Commission is the entity within state government with legislated authority and responsibility to ensure the delivery of safe health care. Under the provisions of RCW 18.130.050, the Washington Medical Commission is empowered to investigate all allegations and complaints to determine whether such allegations are substantiated and to take disciplinary or corrective action, if warranted.

Please be advised this is a preliminary investigation only. No charges have been issued in connection with this investigation.

**Under provisions of RCW 18.130.180(8) and WAC 246-919-620 a licensee shall cooperate by providing a full and complete explanation covering the matter under investigation.**

The Health Care Information Act, RCW 70.02.050 (2)(a), requires that a health care provider disclose health care information about a patient without patient authorization when the information is needed to determine compliance with state licensure rules or laws.

Under the terms of the laws mentioned, you are asked to provide:

1. **Please explain if you make it very clear to your new patients your Christian faith/religious beliefs prior to initiating medical visits when their beliefs, sexuality may not align with yours.**

WASHINGTON
Medical Commission
Licensing. Accountability. Leadership.

2. **Please address the allegation you informed Ms. Bailey she was going to "Hell" due to her bisexuality.**

3. **Please site the passages/translations in the Bible and the specific Bible (Canon) that states Ms. Bailey is going to "Hell" as a result of her bisexuality.**

4. **Please address the allegation that you telling Ms. Bailey she is destined for punishment because of her sexual orientation is a breach of nonmaleficence ("Do No Harm"), potentially creating psychological harm.**

5. **Please explain what you know about trauma informed care. Ms. Bailey informed you she suffered from PTSD.**

6. **Please explain what other reasons or evidence support your views about sexuality that differ from Ms. Bailey's or other patients.**

7. **Please explain how you ensure LGBTQ+ (bisexual) patients feel respected and safe in your care.**

8. **Please address the allegation that your personal religious views undermines patient autonomy and creates an unsafe environment.**

9. **Please explain your practice with patients of different religious or cultural backgrounds (e.g. Muslim, Jewish, Buddhist, etc.).**

10. **Please address the allegation that you are acting in a discriminatory manner due to Ms. Bailey's sexuality.**

11. **Please explain how you separate/incorporate your religious views with your practice of medicine.**

12. **Please explain how you adjust your approach/candor with a patient who is uncomfortable with your religious views and resolve patient distress during their appointment. Ms. Bailey allegedly asked you to stop talking about her sexuality and religion.**

13. **Please explain in detail what you learned from the investigation in Oregon when you allegedly began recommending alternative medicine options and promoting your own spiritual views without adequately documenting this in the medical charts.**

14. **Please explain how you document your religious advice (admonishments) and relevance of said advice (admonishment) in the visit record.**

WASHINGTON
Medical
Commission
Licensing. Accountability. Leadership.

15. **Please explain your communication style when you and a patient disagree about something.**

16. **Please explain your procedure for informing patients regarding recording during visits.**

17. **Please address the allegation Ms. Bailey informed you her sleep medication was no longer working yet you informed her she had adrenal fatigue and prescribed the same sleep medication that was not working.**

18. **Please explain what, if anything you did to diagnose Ms. Bailey with adrenal fatigue which does not appear to be a recognized medical condition.**

19. **Please explain how you treat insomnia and alternatives for continued issues.**

20. **Given the benefit of hindsight, would you have done anything different in Ms. Bailey's care?**

21. **When was the first time you began treating this patient?**

22. **Please provide the last four years of CME you have acquired.**

23. **Where do you currently practice and in what capacity?**

24. **Do you work alone or a larger clinic? If larger clinic have you been disciplined in that system?**

25. **The names of all states in which you are currently licensed.**

26. **Please feel free to provide any additional information/documentation that will further explain your response.**

You may consult with and engage an attorney at your expense to represent you in this matter before making your response. Your response may be used if disciplinary action is deemed necessary. If you wish to have an attorney represent you, please have the attorney file a notice of appearance at the address below.

The Washington Physicians Health Program is available to confidentially assist healthcare professionals who are having trouble with substance use, mental health, or other health problems that could impact safe practice. For more information, please visit wphp.org or call 800-552-7236.

WASHINGTON Medical Commission
Licensing. Accountability. Leadership.

Please submit your response within twenty-one (21) days after receipt of this letter. **You can fax, e-mail, or send your response to:**

Kelly M Walcott, RN, Clinical Health Care Investigator
Department of Health
Medical Investigations Unit
316 W Boone Ave., Suite 170
Spokane, Washington 99201-2346

Thank you for your cooperation.

Respectfully,

Kelly M Walcott
Clinical Health Care Investigator
(360) 790-9696 (p)
(360) 236-2744 (f)
Email: kelly.walcott@wmc.wa.gov